at all or arguments not to exceed 15 minutes per side. Mr. Mark P. Fancher for the appellant. May it please the court. My name is Mark Fancher and I represent Sergeant Johnny Strickland, the appellant in this matter. This afternoon I would like to discuss with you the fact that racial hostility in the Detroit Police Department is pervasive. Sergeant Strickland personally and directly has experienced a variety of racially hostile acts of a kind experienced by numerous black police officers in that department. And this pervasive collective racial experience is not only a subjective perception of Sergeant Strickland, but it has also been chronicled in racism in that department is both severe and pervasive. In this district, the standard is severe or pervasive, which means that if we demonstrate that racism is pervasive in this department, then we should be able to survive summary judgment. And in this case, it is clear from the record that while the district court properly concluded that Sergeant Strickland made a case for a prima facie case for retaliatory discipline, it neglected to acknowledge his testimony that establishes that he did absolutely nothing wrong and that the findings of wrongdoing were pretextual. Finally, the district court erred by excusing from liability an officer who ignored Sergeant Strickland's complaints about tight handcuffs that caused him physical injuries. If we talk about hostile environment and the fact that it's pervasive, we look at critical elements of evidence that are part of the record. One of them is an environmental audit that was conducted of the sixth precinct in Detroit. Now this happened during the pendency of this case, but what it did is it chronicled a cesspool of racism in that precinct with some of the most horrific racial acts that one can imagine. It's significant for this case because the chair of the core committee, John Bennett, filed an affidavit in this matter where he made the observation that those things that are chronicled in the environmental audit are which is the time period which is the subject of this case. Mr. Fancher, if I could interrupt you at this point, the hostile work environment claim, the issue I would have with it, I mean you put on lots of proof that about the Detroit Police Department in general, lots of proof that doesn't paint a very good picture of the department and its attitudes about race, but the Title VII hostile environment claim has to focus on Mr. Strickland in particular because it's not a claim on behalf of others, it's a claim on his own behalf and some of this evidence, it's not apparent to me, had anything to do with his particular situation in the workplace. Can you address that? Yes, Your Honor. If you look at the core committee's findings, you find that Sergeant Strickland had all of those experiences that are described as experiences of Black officers throughout the department. I can specify them. Sergeant Strickland was the victim of shunning by officers Garrison and Steele who were the primary racial culprits in the 6th Precinct throughout his career as a police officer. He personally observed White supervisors disrespecting Black officers and I can point to places in the record where he testified about that in his deposition. Sergeant Strickland was himself disrespected by White supervisors and fellow officers. While working in the 8th Precinct, Sergeant Strickland was passed over for favorable work shifts that were given instead to White officers. He testified to that in his deposition. In addition, Sergeant Strickland and a White officer engaged in the same alleged conduct, but it was only Sergeant Strickland who was disciplined for neglect of duty. He was denied opportunity. These are the kinds of complaints that were the heart of the core committee's report and referred to what was happening to Black officers throughout the and he testified very clearly in his deposition that he experienced all of these things personally and compounding his experience are the things that the district court did focus on, the things that he did point to as those explicit types of racial occurrences that happened with respect to social media postings, very ill-considered and racially charged comments by police leadership. All of these things combined, and we are required to consider this case based on the totality of the circumstances, show a very hostile environment. And there has been a focus on individual incidents in this case where they look at individual incidents in isolation and say, well, nobody uttered a racial epithet there, nobody said anything that would circumstances standard. Because if you look at the totality of it, of his experience, and you look at the totality of the experiences of Black officers in the department, you see a very definite, consistent pattern. It's the Black officers who are always denied training. It's the Black officers who are not given the proper work shifts. It's the Black officers who face all kinds of retaliation. And you take all of that together and you see a distinct pattern. Why should Sergeant Strickland be excluded from that group when it's so clear that there's this pattern that's happening? And I think most disturbing of all is the harassment that he experienced in the gas station parking lot. Yes, there was nobody in that incident who uttered a racial epithet, but look at how they treated this man. He, at some point, even if there is a contest regarding when he identified himself, they knew he was a police officer. And even after they knew he was a police officer, they continued to humiliate him, they continued to name call, they continued to belittle him, and they kept him in those tight handcuffs. Now this is a man who's got a badge. This is a man who has taken an oath to serve and protect the public, who's supposed to be part of their group, and they treat him with that level of disrespect. And the only reason, only logical inference that can be drawn is given the pattern of conduct by white officers in this department that they felt that they had license to do this to this particular officer. And in this instance, it went beyond just what happens when you're not given a favored work shift or opportunity to go to training. It involved actual physical abuse, excessive force. So yes, taken as a whole, we see what's happening here. And that's important in this case to look at the totality of the circumstances. You know, related to this is the retaliation that he experienced. You know, the district court found that he did make out a prima facie case for retaliation, but said that there was a legitimate non-discriminatory reason that was offered by the was charged with and the facts that he offered, then he shows that the discipline was pretextual. The first charge was refusal to obey an order by a police officer investigating a suspected hand grenade. The facts are clear, both from Sergeant Strickland and from the officers on the scene, that there was a heavy fog that night. There is no affirmative statement by the officers that they identified themselves. Sergeant Strickland states clearly that they never identified themselves. He had no idea he was at a crime scene and the officers never identified themselves. So he's being accused of not complying with an order by a police officer. He didn't even know that they were police officers. So there was no basis in fact for this charge and he did nothing wrong here. He was also charged with using authority or position for financial gain or for obtaining privileges or favor and that specifically referred to his going to the gas station to get surveillance footage or surveillance video. But his testimony makes clear that he went in and asked for that immediately after he was released from handcuffs and when he was in civilian clothing and when he went in he never mentioned the fact that he was a police officer. He did the same thing you or I would do if we were involved in any type of incident and we suspected that there might be some video footage available. We would go and ask for it and when he asked for it they said he could have it and that's before they even knew he was a police officer. There was no basis for this charge. He was charged with withholding information, bearing on crimes, basically the recording that he obtained. But the appropriate person to have that recording was the union steward. He was the union steward. He was the one that was supposed to have it. There's no basis for that charge and finally when he's charged with neglect of duty for failing to complete an activity log he didn't complete it. We admit that but at the same time during the same incident officer Stephen Murdoch who was a white officer also did not complete a report which suggests that this was an arbitrary decision. So we look at that we look at the excessive force claim where all the elements are satisfied there. It's clear from both the both Detroit officers and from Sergeant Strickland that he complained about having pain about the handcuffs being too tight. It's clear that officer Schimmick who was in charge of watching him did not release those handcuffs or give him any relief and it's clear that he suffered an injury. The district court said well because another officer loosened the handcuffs then he has no basis for complaint but this is an individualized analysis that we're doing of particular officers and this particular officer whose responsibility it was to look after him and to make sure that he was not suffering excessive force testified that she has no idea whether he was whether the handcuffs were loosened because after she was told to let go of them she just wandered off and walked around someplace and the lone black officer on the scene is the only one who came and loosened those handcuffs for him. So in the end we say that there's a racially hostile environment because of a consistent pattern that's been demonstrated and objectively corroborated by reports that were prepared by the police department itself. The elements of excessive force have been satisfied and those disciplinary charges were purely pretextual and retaliatory for the fact that Sergeant Strickland filed an EEO complaint specifying race as the basis for his complaint. All right I guess we can hear from the city of Detroit. Ms. Crespo would you like to respond? I would. Good afternoon may it please the court Laquena Crespo on behalf of the appellees. The appellant brings this appeal requesting this predicated on baseless grounds. He makes the argument although he makes a great argument the evidence does not support his argument and which is why the district courts dismissed his case in its entirety. As to his racially hostile work environment claim it is true that when the court is faced with a racial hostile work environment claim the analysis the totality of the circumstances. However that analysis is not triggered into the fourth prong. A court must first decide as Judge Giffen stated which conduct was based on his race this plaintiff which was African-American and which conduct affected his workplace. And when the court properly relying on William versus CSX and Armstrong versus Whirlpool she properly bifurcated and excluded the evidence at the gas station opining that no reasonable juror would be able to find that that was due to him being African-American. I know one reason is because it was another African-American officer involved in the incident which he complained about. Two she excluded evidence that plaintiff lacked any first-hand knowledge about. He didn't know when he heard of it where he heard of the information and that goes to the Bennett affidavit the core report which they heavily rely on. And three she excluded evidence that occurred after not only he filed his lawsuit but after he filed his amended lawsuit. Courts recognize that a plaintiff cannot be said to be suffering from an environment from from conduct that he was not aware of. So the court did correctly and improperly exclude that evidence. And then the small amount of evidence that she's that the district court found that he could rely upon she found that that that conduct while it may have been insensitive distasteful that it most closely aligned itself with being mere offensive utterances at city of Detroit residents nothing towards any other officers. And utilizing Black versus Zaring this court found that when most comments are not directed at a plaintiff that a district court can conclude that the conduct was not severe pervasive. Here no comments or conduct was directed at this plaintiff so I surmise that this that the district court could conclude that that the conduct he's the Supreme Court in Harris versus Forklift stated that a mere utterance of an ethnic or racial epithet although it might offend an employee it is not conduct that sufficiently appears with his employment. Can I ask a question what about the so there's the isolation or shunning and then the request for shifts and also the training that all seem perhaps specific to him. So what about that evidence? So the shunning and if you look in the record the shunning that he's arguing he said oh these two actors he said hello and they did not speak back that's the shunning that's the evidence that he's talking about. As to the promotions when my co-counsel drilled down with him in his deposition oh I don't recall what promotions I went out for I don't recall and it was later learned that the collective bargaining agreement for his union determines how promotions are done which is by seniority which in fact this plaintiff was promoted to I think I addressed all of them the shunning the oh and training if you look at the evidence this officer has a mask that's like five pages long and you can see all of the training that he received marksman training sharpshooter training all type of training he's never been denied and what he offers is mere vague statements oh I just some they were disrespected or I wasn't aware or and when we drill down okay what went I don't recall I don't recall that's not enough to get a plaintiff to a jury and the court properly analyzed all of his evidence and so therefore um now the the the plaintiff ignores the fifth element which is the um employer's responsibility to act his ignoring the element doesn't negate the fact that he still must prove it he admits in his briefs in his deposition that officers who engaged in that conduct were disciplined there was environmental audit when it was brought to the chief's attention to figure out what was going on and I want to submit to this court the police department is employs over 3 000 individuals officers work in the great city of Detroit which spans over 14 precincts including uh in addition to a headquarters and a communication center this plaintiff never worked at the the precinct that was the precinct of concern never had any contact with that precinct never involved in anything in his deposition testimony he said have you seen discrimination or been discriminated against no he hasn't and so as to his so therefore the district court properly evaluated his evidence on the totality of the circumstances standard and found that he did not meet the severe pervasive conduct to survive summary judgment as to his retaliation claim the district court found that he made a prima facie case okay however utilizing the good old mcdonald douglas burden shift and found that the detroit police department had a legitimate non-discriminatory reason for the discipline and that this plaintiff failed to offer any evidence to overcome pretext and so the court found well plaintiff here he admits engaging in all of the conduct that he was disciplined for as i stated in my brief just because he launched the initial complaint he knew that that did not render him immune from subsequent conduct based on his own actions this plaintiff this officer who should know better was very combative at the scene he admitted you don't know who i'm who i am you're you don't know who you're talking to this was his attitude at the scene who drove in the scene of an active bomb it was an active grenade at a gas station he was being combative he also went back while on duty outside of his district to that police officer plaintiff's counsel was making it seem like that night only no he was disciplined because he left his post and went to that gas station while on duty and did not let anyone know did not mark it in his log and so the the district court properly found the only thing he offered here to overcome pretext was excuses on while he why he engaged in the conduct nothing to overcome the pretext that he's required to overcome before the burden shifts back and so therefore the district court properly once again dismissed his retaliation claim now i did not argue this in my brief because it was brought to my attention afterwards the plaintiff when he found his initial eeoc claim he never mentioned that he was doing a retaliation his eeoc claim only mentioned a racial um race discrimination nothing about retaliation under title seven so i know it's late but i would surmise i would surmise that the court wouldn't have jurisdiction over that but lastly to his tight handcuffing claim the plaintiff asked this court to rely on the opinion in jones versus city of illyria ohio however that point that case involved excessive force dealing with an arrest and a late arriving officer and what the court stated was when someone's constitutional rights have been violated you look at the um individual officer's actions here the district court properly found that based on the elements this court laid out for excessive excessive handcuffing which is plaintiff already stated he complained about the handcuffs they were ignored and a resulting injury the district court properly found that his complaint did not go ignored when he complained shimmicks partner seasoned partner might i add doesn't his let me ask you about that because i read his depo his depo testimony that he asked her or said that they were tight nothing happened and it was only after he made another request to the other officer that they loosened that he loosened the handcuffs and so in that case she never did anything and i don't know why she would get the benefit of his other request to a different officer who then loosened the handcuffs let me that's a great question i want to respond to that and plaintiffs and this is document ecf number um 36-7 the plaintiff in his internal affairs investigation states that his comment to shimmick was you don't have to hold me like that now that you know that i'm a police officer and what she did she responded she let him go she stopped holding the handcuffs he admits when when he said that she let the handcuffs go then he complained that the handcuffs were too tight and that's when blackburn loosened the handcuffs now these this was a general complaint made in front of two police officers it wasn't that blackburn wasn't at the end of vicinity when the complaint was made the the evidence showed that they were there together standing there together and that when she let go of the handcuffs she walked off she walked to the other side of the vehicle where her partner was when he said the handcuffs are tight the partner loosened them this plaintiff wants to add a new element that one officer must act before the other but when there's a general complaint as long as the officer responds that the the plaintiff can say that he met these elements and so he may try to contradict himself but the fact that he complained to the two of them simultaneously and that the one one of them loosened the cuffs which answered his complaint that's exactly i'm not just saying it that's exactly what happened and that's what the evidence shows i i guess i'm a little confused because i think his deposition is not clear on that i don't i mean i understand depots are sometimes you know uneven or whatever but i i guess you're pointing to what is the other document you're pointing to i'm sorry 36-7 yes this is 36-7 this is the internal um internal report that was done more closely after the incident than the deposition i practiced criminal law a little bit and they said that the memory is is better when it's closely when questioning done closely related to the incident as opposed to further down the line but if documents are conflicting we couldn't resolve in this context the factual conflict we wouldn't be able to weigh in that way right and i don't think that they're all the way conflicting i think that there was a complaint made and i think that there was a response now i will state that even if the court was to say okay he made this complaint we're not we're not disputing and saying there are any issues and a fact here we're taking his statement as true she let go after he complained she let go of the handcuffs and and judge nobody and that same um transcript is that what did she say anything after that no the partner loosened them she did respond she let she turned loose the handcuffs and this is a rookie officer and this court stated and um and gets versus which is not in my brief i just um um researched this that sometimes you have to go beyond just those the the facts and you have to look to see a reasonable officer in this particular situation and and i submit to this court this was a live bomb and a live grenade and so i just want to conclude with this it was judge keflich who stated that fifth third versus chicago mutual that when a plaintiff comes to us with nine grounds for reversing the district court it truly means they are none these plaintiffs have no grounds to reverse the district court and also submit this after a reading of judge edmund's opinion she gave this plaintiff every option every out and still found that his claim did not rise to a level to survive summary judgment this is the her her opinion is the exact example of what light most favorable to the non-moving party looks like and for the remain for my oral arguments and what's placed in my brief um i ask this court to affirm a district court in its entirety thank you thank you very much and we'll hear about them your honor and uh picking up on the handcuffing issue i would respectfully suggest to the court that rather than look at what johnny strickland had to say about what happened out there look at the person who's accused of the excessive force look at what she had to say about it in her deposition and what she said is that at the time that the the handcuffs were loosened she was she did not even know that it was officer blackburn blackburn who loosened them and when asked why she said it was because she was you know other people were arriving and she just was walking around someplace she walked off and left this man in tight handcuffs this the scenario outlined by council is is fiction uh this this request was not one that was honored in officer two requests he requested that she loosened the handcuffs she didn't do it and then when he asked the other officer he did it is that how it happened i'm not really clear on that myself the only thing i am clear on is is that he made those requests it's not clear who he directed them to but he was complaining about the fact that these guys were tight you said you're saying requests was there more than one request to loosen them i believe so your honor i i can't absolutely say that without you agree do you agree that even if the second officer is loosening the cuffs wouldn't let's say it doesn't completely absolve shimmick it would at a minimum would it would be relevant to what his injury or his damages are in other words he's damaged only between the time that she should have loosened the cuffs and the time that he actually loosened the cuffs like that's the amount of injury conceivably but we're addressing liability um and as to liability that has to be very individualized and so we that's the first step as far as we are concerned i would just close by noting and reminding the court that uh you know the references to the fact that uh there needs to be something explicitly racial is is something that jackson versus quantics addresses clearly um you know look at the totality of the circumstances we see racial patterns here you know we look at the fact that he individually suffered a great deal of discrimination he has progressed uh to his credit uh his promotions have been earned but there have been instances when he's been discriminated against he's asked for good shifts and has not been given them because they were given to white people he's asked for training and has not been given doesn't mean that he hasn't ever received training or good shifts but there have been those incidents and generally speaking we look at what happens with respect to the other things that have been referenced that are explicitly racial consider that if in a workplace there's racist graffiti that's prominently displayed in the workplace if the worker does not is not able to identify the person that did it doesn't know when it happened it makes it no less harmful to that person who has to experience that and for the sum total of his entire tenure with the detroit police department he's experienced racial hostility he's seen it he's observed it he's heard about it in various forms and it's all been objectively corroborated by reports that the detroit police department itself has commissioned and has in some cases ignored all right if that concludes your argument i think of the case can be submitted